**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **JOSE EVARISTO RIVERA,** | § | |
| | § | |
| **V.** | § | **A-15-CV-295-LY** |
| | § | **(A-12-CR-300(2)-LY)** |
| **UNITED STATES OF AMERICA** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   **THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE**

Before the Court are: Jose Evaristo Rivera's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, filed on April 17, 2015 (Dkt. No. 117); and the Government's Response, filed on June 18, 2015 (Dkt. No. 121). Rivera has not filed a Reply. The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.  GENERAL BACKGROUND

On July 23, 2012, Jose Evaristo Rivera, ("Rivera") was arrested and charged in a Criminal Complaint. Dkt. No. 1. On August 7, 2012, Rivera was charged in a two-count indictment with conspiracy to manufacture marijuana and manufacturing marijuana, in violation of 18 U.S.C. §§ 841 and 846. Dkt. No. 19. After a jury trial, on December 12, 2012, the jury found Rivera guilty as to both counts. Dkt. No. 86. On March 11, 2013, the District Court sentenced Rivera to a prison term of one hundred-twenty (120) months on each of Counts One and Two, to be served concurrently; and to a term of supervised release of five (5) years on each of Counts One and Two, to be served

concurrently.  On March 18 , 2013, Rivera's counsel filed a Notice of Appeal, but noted that he was doing so after having moved to withdraw, as Rivera had stated that he was unhappy with his counsel's representation.  Dkt. No. 100.  On March 22, 2013, Rivera himself filed a pro se Notice of Appeal, also stating that he believed his counsel was ineffective.  Dkt. No. 104.  Rivera's newly appointed counsel thereafter filed an *Anders* brief and sought leave to withdraw.  On January 20, 2014, the Fifth Circuit Court of Appeals granted that motion and dismissed Rivera's Appeal as frivolous.  Dkt. No. 112.

On April 17, 2015, Rivera, through his attorney, filed the instant Motion under Title 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  Dkt. No. 117.  In his Motion, Rivera asserts that his trial counsel provided him ineffective assistance by failing to file a meritorious motion to suppress evidence.  Dkt. No. 117 at p. 4.[1]

## II.  STANDARD OF REVIEW

Under § 2255, four general grounds exist upon which a defendant may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  The nature of a collateral challenge under

---

[1]When a prisoner files a § 2255 motion, the district court must grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *U.S. v. Samaniego*, 532 Fed. Appx. 531 (5th Cir. 2013) (citing § 2255(b)); *see also United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) ("A motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief."). The Court finds that Rivera is not entitled to a hearing because the motion, files, and record conclusively show that he is not entitled to relief.

§ 2255 is extremely limited:  "A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991), *cert. denied*, 502 U.S. 1076 (1992).  If the error is not of constitutional or jurisdictional magnitude, then the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).  As the Supreme Court has explained, the reason for these rules is that "a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).

To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–688 (1984).  Failure to establish either deficient performance or prejudice defeats the claim.  *Id.* at 697.  To prove the deficient performance prong of the *Strickland* test, a petitioner must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687.  The proper measure of attorney performance is reasonableness under prevailing professional norms.  *Id.* at 688.  "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*

### III.  FACTUAL BACKGROUND

The evidence in the record shows that on July 20, 2012, after ariel surveillance revealed a large number of marijuana plants growing on rural property about ten miles outside of Brenham, Washington County, Texas,  law enforcement officers conducted a raid on the property.  DEA Agent

Steven Billings testified at Rivera's trial that on the morning of the raid, from his Air Wing helicopter he saw someone in a white t-shirt walking in the grow area, and notified the agents on the ground about the individual. (Dkt. No. 106, Tr. Vol. 2, pp. 29-33). APD Detective and DEA task force member Brian Crissman testified that 30 minutes prior to the raid, he received word from the Air Wing that they had observed a person in the grow field in a white t-shirt. *Id.* at 39. Crissman further testified that the grow field was located on a 28-acre tract of land, and that next door was another 49-acre tract of land. *Id.* at 38. Crissman testified that the adjacent 49-acre tract was owned by Vivian Owen, and that the officers traced hoses watering the marijuana grow to a well located on the Owen property. *Id.* at 56-60, 67.

Kyle Kokemoor, an investigator with the Washington County Sheriff's Office, testified that prior to the date of the raid, the DEA had contacted his department to request local assistance with the planned raid. *Id.* at 83-85. He was directed to assist in the raid by entering the neighboring Owen property, clearing it, and detaining anyone found on the property. *Id.* Kokemoor testified that as soon as he and assisting Officer Ocanas drove onto the Owen property, they encountered two men, one of whom was putting on a work shirt over a white t-shirt. *Id.* at 86. Kokemoor testified that prior to entering the property he had been advised that a subject of interest wearing a white t-shirt had been identified. *Id.* at 87. He further testified that Ocanas detained the man in the white t-shirt who was walking, along with the other man, toward a dark SUV located on the Owen property. *Id.* at 88. Kokemoor testified that the subject in the t-shirt was Rivera. *Id.* Kokemoor testified that he was instructed by the lead case agents to make sure the two men had no weapons, so the officers patted down the suspects and found a cell phone on each man. *Id.* at 89. He further stated that the lead agent told him he was going to call a number they were tracking, asked him to let him know if

either of the cell phones rang, and that one of the phones did ring. *Id.* at 90. Kokemoor stated that Rivera told the officers he had been the caretaker of the Owen property for fifteen years and that he was also paid by the owner of the adjacent property to watch that property. *Id.* at 92.

Co-defendant Everet Gonzales[2] testified that he met Rivera in April of 2012. *Id.* at 104. He testified that he was taken to the Washington County property, and that Rivera showed him how to turn on the pump at the well, and helped him and another man working with him on the grow property to dig irrigation lines from the pump to the marijuana grow. *Id.* at 106. Gonzales further testified that Rivera helped him hook up the plumbing and electric fixtures to water the marijuana. *Id.* at 107. He also testified that Rivera turned the water on and off to water the marijuana. *Id.* at 108. Gonzales further testified that Rivera brought him and another person working on the property food on two occasions and took them into Brenham on three occasions. *Id.* at 110-111. Also, Rivera allowed him and his companion to shower at the Owen house and to get water from an outdoor faucet on the property. *Id.* at 113-114. Gonzales stated that Rivera provided him with a chain saw to help cut down trees to assist in the grow operation. *Id.* at 117. Gonzales testified that on the day of the arrest Rivera was wearing a white t-shirt. *Id.* at 120. Gonzales also testified that Rivera told him he would warn him if Vivien Owen visited the property so he could hide himself from her. *Id.* at 123.

DEA Special Agent Steven Ebmeir testified that he had been given a tip from the DEA in Wichita, Kansas about a phone number connected to a potential marijuana grow. *Id.* at 131. The Kansas DEA had traced the phone through cell towers to a location near Brenham, Texas. *Id.* The

---

[2]Throughout the documents in this case, including the indictment and judgment, the co-defendant is referred to as "Everette Gonzalez." As reflected in the PSI, however, his true name is "Evert Gonzales."

Texas DEA triangulated the location of the phone, surveyed the property by air and determined that a large outdoor marijuana grow was in place on the property. *Id.* at 132.  The DEA planned and executed the raid on the subject property for July 20, 2012. *Id.* at 133.  Ebmeir testified that he was notified by Kokemoor that two subjects had been detained on the adjacent property. *Id.* at 134. Ebmeir then informed Kokemoor that he was going to call the number of the cell phone the DEA had been tracking and to let him know if either phone rang. *Id.* at 135 .  Kokemoor reported that one of the phones rang. *Id.*

Ebmeir testified that he instructed Kokemoor to keep Rivera and Gonzales detained and to transport them to the Washington County Sheriff's Department so he could speak with them. *Id.* Ebmeir testified that prior to interviewing the two men, he went through their cell phones and identified several photos of Rivera in the marijuana grow and that Gonzales' phone number was a contact in Rivera's phone. *Id.* at 137.  Ebmeir testified that when he interviewed Rivera, he was wearing a white t-shirt. *Id.* at 140.  Ebmeir further testified that while he interviewed Rivera, Rivera stated that a man called Ramiro Andaya approached him in April of 2012 and told him that they were growing marijuana on the adjacent property.  Ramiro offered Ramirez $10,000.00, but Ramirez turned it down. *Id.* at 144.  Ebmeir testified that while he was interviewing Ramirez, Ramirez received an incoming call from Andaya on his cell phone. *Id.* at 146.  After the call, Rivera stated that he initially knew Andaya through his truck driving business. *Id.*

Rivera testified at trial.  He testified that Ramiro Andaya appeared at the Owen property one day, told him about the marijuana grow, offered him money and threatened him. *Id.* at 167.  Rivera testified that he did not help lay the water lines and he did not help water the marijuana. *Id.*  Rivera

testified that on the day of the raid, he was not on the subject property, and that he was wearing a white t-shirt, but covered by an overshirt. *Id.* at 170.

## IV.  ANALYSIS

Rivera argues that he was denied the effective assistance of counsel because his counsel failed to file a motion to suppress any evidence obtained from his cell phone, which contained photographs of him in the grow field.  Rivera principally relies upon *Gentry v. Sevier*, 597 F.3d 838 (7th Cir. 2014), for his contention that the arresting officers did not have the requisite "reasonable suspicion" needed to conduct a *Terry* stop.  *See Terry v. Ohio*, 392 U.S. 1 (1968).  Rivera argues that the only information that officers had tying him to the grow operation was the mere fact that he was wearing a white t-shirt, particularly given that he was the caretaker for the property where he was detained, which happened to be adjacent to the grow field.

The record indicates that trial counsel did not file a motion to suppress.  "Failure to file a suppression motion does not constitute per se ineffective assistance of counsel."  *United States v. Chavez–Valencia*, 116 F.3d 127, 134 (5th Cir. 1997).  Both deficient performance and prejudice must be proven, and failure to prove either is fatal to such a claim.  *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).  Where failure to litigate a Fourth Amendment issue is the foundation of an ineffectiveness claim, in addition to proving counsel deficient, to show prejudice the defendant must prove his Fourth Amendment claim is meritorious and there is a reasonable probability the verdict would have been different absent the excludable evidence.  *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).  Thus, before the Court is: (1) whether it was objectively reasonable for trial counsel to

not have moved to suppress at the time of trial and in light of the facts and circumstances; and (2) whether the failure to file a motion to suppress prejudiced Rivera.[3]

### A.     Deficient Performance and the *Terry* Stop

An officer may detain an individual briefly for investigatory purposes if, under the totality of the circumstances, he or she has reasonable suspicion based on specific and particularized facts that the person is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *United States v. Arvizu*, 534 U.S. 266, 273 (2002) .  In considering a motion to suppress, courts look at the facts known to the officers at the time to determine whether they had reasonable suspicion for the stop. *United States v. Vickers*, 540 F.3d 356, 361 (5th Cir. 2008); *see United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006) ("Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the search and seizure.").  The facts leading to a finding of reasonable suspicion do not have to be based on a law enforcement officer's personal observation, but can also arise from the "collective knowledge" of law enforcement entities, so long as that knowledge gives rise to reasonable suspicion and was communicated between those entities at the time of the stop. *United States v. Ibarra–Sanchez*, 199 F.3d 753, 759–60 (5th Cir. 1999).  The court "looks at all circumstances together to weigh not the individual layers, but the laminated total." *United States v. Olivares–Pacheco*, 633 F.3d 399, 402 (5th Cir. 2011).

The evidence in the record supports a finding that the officers had reasonable suspicion to detain Rivera and to frisk him.  This reasonable suspicion was not based only on the fact that Rivera

---

[3] Rivera's trial counsel has submitted an affidavit explaining why he did not file a motion to suppress. Dkt. No. 121-1.  Among other thins, he states that after discussion with his client he did not believe "there was sufficient law to back up a claim for suppression."  *Id.*

was wearing a white t-shirt.  The detaining officer (Investigator Kokemoor) testified that a large marijuana grow had been identified on the subject property by law enforcement and that he was part of a raid on that property.  Kokemoor testified that at a briefing 30 minutes before he encountered Rivera, officers were notified that a subject in a white t-shirt was identified by law enforcement in the grow area, and he further knew that the property on which he encountered Rivera was immediately adjacent to the grow operation in a remote, rural area.  Kokemoor testified that when he first saw Rivera, Rivera was pulling on a work shirt over a white t-shirt.  These facts are sufficient to support the detention of Rivera, as they are sufficient to create a reasonable suspicion that Rivera was involved in the marijuana grow because of his vicinity to the grow at the time of the raid and the description of his clothing.  In *United States v. Vickers*, 540 F.3d 356, 361 (5th Cir. 2008), a robbery victim reported that his home was robbed, gave a description of the suspect's clothing and his location.  Upon arriving at the location, the officers discovered Vickers about 75 to 100 yards from the burglarized home and wearing clothing that met the description of the reported burglar. Considering the totality of the circumstances in that case, the court found the officers had a "particularized and objective basis" to believe that a crime had been committed and that Vickers was involved.  The same is the case here.

Rivera relies on three cases he asserts demonstrate that an officer may only detain an individual based on an item of clothing when that item is distinctive.  In *U.S. v. Edwards*, 469 F.2d 1362 (5th Cir. 1972), the Fifth Circuit found a detention constitutional when the officers had personally observed the appellants' car in the vicinity of two armed robberies shortly after the crimes had been committed, occupants fit the sex and race of the robbers, and the driver was wearing a "bush hat," a distinctive item of apparel described by one of the victims.  In *State v. Fletcher*, 500

S.E.2d 668 (1998), a North Carolina court found that the officers had reasonable suspicion to detain a suspect when they were relying on a white t-shirt *along with* a description of the suspect's race. Despite Rivera's assertion, these cases do not stand for the proposition that an individual may not be detained based merely on an item of clothing unless it is distinctive; but rather, stand for the proposition that it is the totality of the circumstances and the specific and particularized facts known to the officer which establish reasonable suspicion. In each of these cases, similar to Rivera's case, the suspects were observed in the area of the commission of a crime, near the time of the crime, and were wearing clothing identified by a witness, which was sufficient to sustain the detention. These cases in no way establish that Rivera's detention was unreasonable and do not support filing a motion to suppress.

As noted earlier, Rivera's motion is based primarily on *Gentry v. Sevier*, 597 F.3d 838 (7th Cir. 2014). But that case is easily distinguished from the facts here. In *Gentry,* the court found that a mere report of a "suspicious person" pushing a wheelbarrow in the area was insufficient to detain Gentry under *Terry* because there were no other facts known to the officers suggesting that Gentry was committing a crime, and there was not any report of a crime having been committed. Unlike *Gentry*, Rivera's detention was not the result of a suspicious person report without a concomitant crime. The DEA had already established through air observation that a crime was being committed on the subject property, and Rivera's clothing matched a description of an individual observed in the field of marijuana 30 minutes earlier. *Gentry* does not establish that Rivera's detention was unreasonable as a matter of law. The Court finds Rivera has failed to establish that a motion to suppress the seizure of his cell phone during his detention would have succeeded.

B.      **Prejudice**

Additionally, Rivera cannot establish that the verdict would have been different had the evidence from the cell phone been excluded from trial. *Kimmelman*, 477 U.S. at 375. Rivera's co-defendant Gonzales testified that Rivera helped water the marijuana plants, dug the irrigation ditches from the Owen property to the marijuana grow, and participated and assisted in the grow in various ways. This evidence was not the product of the search of the cell phones, but other testimony. Moreover, Rivera's testimony was that he knew about the marijuana grow but had been threatened to keep quiet. The evidence at trial showed that the marijuana was irrigated from a well on the adjacent Owen property. A reasonable juror would consider that Rivera had been the caretaker of both the property where the grow was located and the adjacent property for several years. Rivera had knowledge of both the absentee landlords of the properties and the marijuana grow. The evidence showed that Rivera was also acquainted with the alleged "owner" of the operation (Andaya) prior to the marijuana being planted, and Rivera acknowledged that Andaya planned the grow. Lastly, a man in a white t-shirt was observed on the grow property by law enforcement and Rivera was detained wearing a white t-shirt near the grow property. Gonzales, who was arrested heading toward an SUV with Rivera, and whom Rivera testified he knew was growing marijuana, testified that Rivera was the only person he saw wearing a white t-shirt that day. This evidence was sufficient to convict Rivera even without the cell phone photos of him in the field, and Gonzalez's contact information in his phone. A movant must affirmatively prove, by a preponderance of the evidence, that he was prejudiced due to counsel's deficient performance, *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994), and Rivera's arguments fall short of demonstrating this.

### C.   *Riley v. California*

Since the time of Rivera's trial, the Supreme Court has ruled that a warrant is required to search a cell phone. *Riley v. California*, 134 S.Ct. 2473 (2014). But as Rivera notes in his motion, because *Riley* "was decided after Petitoner's trial . . . defense counsel cannot be faulted for not anticipating new law." Dkt. No. 117 at 13. At the time of Rivera's trial, the law of the Fifth Circuit was that a warrantless search of a cell phone was valid. *See United States v. Finley*, 477 F.3d 250, 260 (5th Cir. 2007) (warrantless search of cell phone incident to arrest was lawful). The *Strickland* review "judge[s] the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. Rivera's trial took place in December of 2012. *Riley* was decided in June of 2014. Thus, counsel's failure to raise an objection based upon the warrantless search of the cell phone, before the law establishing that such a search violated the Fourth Amendment, cannot render his performance deficient. "Counsel is required to research facts and law and raise meritorious arguments based on controlling precedent, but the law of this circuit is clear that counsel need not anticipate changes in the law or raise meritless objections." *United States v. Fields*, 565 F.3d 290, 296 (5th Cir. 2009) (citations omitted).

### D.   Summary

The arresting officers possessed the requisite reasonable suspicion to detain Rivera and a motion to suppress the seizure of his cell phone would have been unsuccessful. Additionally, Rivera has failed to establish prejudice, as the evidence at trial was adequate to convict him in the absence of the evidence obtained from his cell phone. Because he has failed to establish that his counsel's performance was deficient or that he was prejudiced by counsel's performance, Rivera's Motion to Vacate should therefore be denied.

## V.  RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **DENY** Jose Evaristo Rivera's

Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 117).

## VI.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under

§ 2255 "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)

(1)(B).  Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States

District Courts, effective as amended to February 1, 2010, the district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of

the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the

requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack*

*v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000).  In cases where a district court rejected a

movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*

"When a district court denies a habeas petition on procedural grounds without reaching the

petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least,

that jurists of reason would find it debatable whether the petition states a valid claim of the denial

of a constitutional right and that jurists of reason would find it debatable whether the district court

was correct in its procedural ruling."  *Id.*  In this case, reasonable jurists could not debate the denial

of the movant's § 2255 motion on substantive or procedural grounds, nor find that the issues

13

presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, a certificate of appealability shall not be issued.

## VI. WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 6th day of August, 2015.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE